PRESS PUB. CO. v. WESTINGHOUSE MACHINE CO.

(Circuit Court of Appeals, Third Circuit. February 24, 1905.)

No. 49.

1. PATENTS—ANTICIPATION—REGULATOR FOR GAS ENGINES.

The Westinghouse and Ruud patent, No. 583,585, claims 12 and 18 for a device for controlling and regulating the operation of gas engines, which may be adjusted at will to admit different proportions of air and gas to the mixing chamber, and also by means of a governor automatically regulates the quantity of the mixture fed to the engine, are void for anticipation, especially by the Hirsch patent granted in 1894.

2. SAME.

Claims for a patent for a device for regulating both the quality of the mixture of air and gas in a gas engine, and the quantity of the mixture supplied to the engine, which would otherwise be void for anticipation, are not saved by including in the combination some one of the old forms of automatic governor to actuate the quantity regulating valve, which is too obvious a step in the art to involve invention, such valves having been long in use for the same purpose on steam engines.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 127 Fed. 822.

L. P. Whitaker, for appellant.

Thomas W. Bakewell and J. Snowden Bell, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the Circuit Court for the Western District of Pennsylvania, in a suit in equity brought by the Westinghouse Machine Company, the appellee, against the Press Publishing Company, the appellant, charging infringement of claims 2, 12 and 18 of patent No. 583,585, granted June 1, 1897, to George Westinghouse, Jr., and Edwin Ruud, and by them assigned to complainant, for "means for controlling and regulating the operation of gas-engines."

The defenses were noninfringement and invalidity of the patent. Both of these defenses were disallowed in the court below, and the patent sustained and declared valid as to claims 12 and 18, and the defendant decreed to have infringed the same. The second claim of the said letters patent was declared to be invalid. The patentees, in the specifications of the patent, thus describe the object of their invention:

"The object of our invention is to provide improved means for controlling and regulating the operation of gas-engines; and to this end it consists in a novel regulating apparatus for effecting a mixture of the air and other gases and varying the capacity of or entirely closing the supply passage or passages through which air and other gases are supplied to the cylinder or cylinders of

a gas-engine, whereby the mingling of the gases, may be effected and the quantity and relative proportions of the air and other gases may be varied, and in certain combinations and features of construction, all as hereinafter fully set forth."

The proportions of air and other gases is regulated by a horizontal rotation by hand of the two sections of a valve, in one of which is the air port and in the other the gas port. The specifications thus speak of the regulation of the quantity of the mixture of air and gas admitted to the cylinder:

"Independent of the rotative adjustment of the valves the quantity of air and other gases will be controlled by the longitudinal movement of the valves, however such movement may be effected, without varying the proportions of the air and other gases. When longitudinal movement of the valves is controlled by means of an automatic governor, the supply of air and other gases will be regulated by and in accordance with the speed of the motor and according to the quantity required; but at any time and independent of the operations of the governor the proportions of the air and other gases may be varied by the movement of the sliding plates 36 and 46.

"So far as the rotary adjustment of the valves 8 and 11 is concerned—that is, the adjustment by which the proportions of the air and other gases are regulated—the valves 8 and 11 operate as two separate valves, but in their longitudinal adjustment they operate and move together in the same manner as a single piston-valve. The dividing of the two valves or their formation in two separately-adjustable parts is for the purpose of varying the relative proportions of the air and gases, but without such division they form a single throttling and mixing valve, whereby the quantity of air and other gases is controlled, and their mixture is effected before passing to the cylinder or combustion-chamber of the motor."

Claims 2, 12 and 18, the only ones with which we are here concerned, are as follows:

"(2) In a regulating device for controlling the supply of air and other gases to a gas-engine, the combination, with air and gas supply passages, of a valve device controlling the air and gas supply ports, or passages, which is adapted to be adjusted in one direction to vary the quantity of air and other gases and in another direction to vary the proportions of the air and other gases, substantially as set forth.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"(12) In a regulating device for controlling the supply of air and other gases to a gas-engine, the combination, with air and gas supply passages, of a valve device controlling the air and gas supply ports, or passages, which is adapted to be adjusted in one direction to vary the proportions of the air and other gases, and in another direction by means of a governor to vary the quantity only of the air and other gases, substantially as set forth.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"(18) In a regulating device for controlling the supply of air and other gases to a gas-engine, the combination, with air and gas supply passages, of a valve mechanism, controlling the air and gas supply ports, or passages, which is adapted to be adjusted to regulate the proportions of the air and other gases, and which is operative by a governor to vary the quantity of air and other gases admitted to the engine without variation of the proportions, substantially as set forth."

The learned judge of the court below, with his usual clearness, thus explains the operation of this class of governing devices:

"Proper relative proportions of gas and air are the essentials to obtaining quality and on quality depend proper explosive results and economy of operation. The other is the feeding of such a proper quantity of such quality and no more as shall meet power operative requirements. The conditions affecting these essentials of quality and quantity are variable and therefore necessitate

the use of adjustable controlling factors. Thus as affecting quality different gases vary in kind, as natural, artificial or producer gases; natural gases differ from each other and while received from a single source of supply will vary from time to time; temperature, pressure and other factors also affect quality. These factors all require a different proportionate adjustment of gas with air in order to obtain the quality of mixture essential to maximum efficiency. The demands for such proportionate changes are so instant that they should be made while the engine is running and the variation of power requirement is so rapid that an automatic means for increasing and decreasing the fuel supply is required. Such a unitary adjustable mechanism is shown in the patent in suit. Briefly stated the mechanism is such that it controls the respective quantity of gas and air admitted through separate ports by horizontally rotating independently of each other two sections of a valve, and thereby narrowing the width of such air and gas port openings. This rotating action affects the relative proportions of air and gas, since each valve section is independent of the other, and so permits individual sectional rotary movement. But these valve sections are adapted to a vertical conjoint, synchronous movement which vertically narrows both the air and gas openings at the same time and so increases or decreases the quantity fed to the engine without affecting the quality of the mixture. This vertical movement of the valve is effected by a governor of the ordinary type, so adjusted that as the speed of the engine increases the quantity fed is diminished, and vice versa. The device is well described by one of respondent's witnesses who says: 'The controlling and regulating device of the patent in suit affords means whereby the separate and independent supply of the constituents of the mixture, that is, the air and gas, may be so controlled and regulated that any desired proportion of these constituents may be established to form a desired character of explosive mixture and thereafter the quantity of the constituents may be controlled or regulated according to the load upon the engine, without varying the established proportions of the constituents. The first of these controlling adjustments is regulated by hand, the second, by a governor performing in this connection the usual office of a governor."

That a unitary valve device for regulating the proportions of gas and air in the mixture to be admitted to the cylinder by one movement, and also for regulating the quantity of mixture of gas and air fed to the engine by another, without affecting the proportions of gas and air in the mixture, was in the art at the date of the patent in suit, seems to have been admitted by the court below in its decree, declaring invalid the second claim of the patent. In its opinion, the court said:

"We are, however, of opinion that the second claim is invalid. Read literally, it is conceded that in view of the disclosure of the Foulis patent, such must be the case."

No appeal has been taken by the complainant below from this part of the decree, and we must assume that the invalidity of this broad claim is acquiesced in, and that no patent monopoly for a combination with air and gas supply passages, of a valve device controlling the air and gas supply ports or passages, adapted to be adjusted in one direction to vary the quantity of air and other gases, and in another direction to vary the proportions of the air and other gases, can be claimed. Claims 12 and 18, which are substantially the same, are only less broad than claim 2, by reason of the requirement that the regulation or varying of the quantity of gas and air, as broadly claimed in claim 2, shall be by means of a "governor"; otherwise, the claims are identical with the admittedly invalid claim 2. Upon this feature, then, must depend the validity of claims 12 and 18 of the patent.

It cannot escape attention that the specifications of the patent,

135 F.—49

above quoted, place no emphasis on the use of a governor for regulating the movement of the quantitative valve, but make the distinguishing features of the invention the control of the proportions of the mixture of air and gas by one movement, and of the quantity thereof by another, "however such movement may be effected, without varying the proportions of the air and other gases." The specifications refer to the use of a governor as one well-known means of regulating valve movement. That the second, out of the 18 claims of the patent, covers broadly these two horizontal and longitudinal movements for regulating proportion and quantity, without reference to any particular means of adjusting the longitudinal movement, confirms this view of the essential features of the combination, as to which invention was asserted. That the old device of an automatic governor, to regulate the opening in a steam valve, is also old in the art of gas engine valves, we think is shown with sufficient clearness by the evidence in this record.

Claim 2 was declared invalid by the court below, expressly upon the reference to the British patent to Foulis, one of the patents shown in the record here by appellant to support its claim of anticipation. "That patent," says the court, "shows a valve adapted (if combined with proper controlling mechanism) to provide the quality and regulate the quantity of air-gas mixture supplied to a gas engine. Thus one of complainant's experts says it shows 'a valve for controlling the air and gas supply, which is adapted to be adjusted in one direction to vary the proportions of the air and gas, and in another direction to vary the quantity only of the air and gas'; the other describes it as containing 'air and gas passages and a valve mechanism adapted to be adjusted in one direction to vary the proportions of air and gas and movable in another direction to vary the quantity of the air and gases passing through it.'" Notwithstanding this, says the court, "when it comes to the control of the vertical movement, which in the complainant's device is through a co-acting governor, * * * we find such controlling appliance is not disclosed in the Foulis device or any such combination shown."

We may accept this as true, and still not concede that claims 12 and 18, by claiming the combination described in claim 2, only, when the mechanism for regulating the supply of air and gas is controlled by an automatic governor, are rendered valid. No special form of governor is defined, and the claim is therefore broad enough to cover any automatic governing device. The centrifugal or ball governor, illustrated in the drawings of the patent, is, as we have said, one of the oldest of these governors, as used to regulate the supply of steam to a stationary engine. The record also discloses the use of such a governor in gas engines precisely in the manner in which it is shown to be used in the patent in suit, notably in the "Fletcher," the "Drysdale," and "Hirsch" patents. These patents are not referred to by the court below in its opinion, but we think they have an immediate bearing upon the validity of the claims in question. The patent to Hirsch was issued in 1894. In it is shown a valve device in which the air and gas inlets are sep-

arately controlled and adjusted by a rotary hand movement, thus regulating the proportion of air and gas, and the quantity of mixture fed to the engine is controlled by a vertical adjustment, regulated by a centrifugal governor mounted upon the stem of the valve, as in the patent in suit. We think the "Hirsch" patent is a clear anticipation of the whole combination of the 12th and 18th claims of the patent in suit. In the drawings, specifications and claims of that patent, we have the elements of the combination as set forth in the 12th and 18th claims of the patent in suit; that is, we have the combination with air and gas supply passages (1) of a valve device controlling the air and gas supply ports, adapted to be adjusted in one direction to vary the proportions of the air and other gases; (2) and in another direction, by means of a governor, to vary the quantity only of the air and other gases.

It is contended by plaintiff, upon the evidence of its experts, that the "Hirsch" patent discloses a construction substantially different from that of the patent in suit, and that commercially it could not be operated so as to accomplish what was claimed for it. A careful examination, however, of the patent, and the accompanying drawings, and the testimony of the experts for the defendant, convinces us that the criticism made upon the comparison between the "Hirsch" patent and the patent in suit, is not justified, and that the tests, when properly applied and under proper conditions, vindicate the commercial practicability of the device.

In the "Drysdale" patent, issued June 27, 1893, we also have a valve mechanism, in which there is a horizontal rotary adjustment by hand, regulating the proportion of air in mixture with the gas, the gas supply remaining fixed; also a horizontal rotary adjustment by a governor regulating quantity. There is also shown an arrangement in which, in combination with a horizontal rotary hand adjustment varying the proportion of air, there is a vertical adjustment by a governor regulating quantity.

It is not necessary that we should discuss in detail the more or less of anticipation shown by the "Fletcher" patent and the "Robison" patent, or the weighted bellows device in the British "Foulis" patent, which, it is contended, is an automatic governing device, though not of the centrifugal pattern. Although we think it is sufficiently shown that there has been an anticipation of everything in the combination covered by the twelfth and eighteenth claims, including the automatic governor, we are of opinion that the claim was not rendered patentable by the specific reference to some form of governing device, as a means of actuating the valve regulating the quantity of mixed gas and air fed to the engine. Governing devices of the kind indicated are old and of different forms. The combination broadly claimed in claim 2, and identically in claims 12 and 18, excepting the governing attachment, might be predicated on any means of actuating the quantity regulating valve. It could be moved by hand as the valves regulating the proportion are moved. To attach some one of the old forms of automatic governor as the actuating means of the quantity regulating valve, was too obvious a step in the art to involve invention, and the adoption of

so old and well-known a form as the centrifugal governor, as shown in the drawings of the patent, cannot serve to narrow the claims in question within patentable compass. These claims, too, 12 and 18, are broader than the special constructions shown in the specifications and drawings. These details of construction are not mentioned in the claims, which seek a broader field for their monopoly.

For the reasons stated, we think the court below should have dismissed the complainant's bill, and its decree is therefore reversed, and the cause is remanded to the Circuit Court, with directions to enter a decree dismissing the bill.